IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA

v.

JOY GIBSON (02)

No. 4:25-CR-282-P

## FACTUAL RESUME

PLEA: One Count Information, Providing Material Support to Terrorists, violation of 18 U.S.C. § 2339A

MAXIMUM PENALTY:

- Imprisonment not to exceed 15 years;
- A fine not to exceed $250,000 or both a fine and imprisonment;
- A supervised-release term not to exceed three years, which would follow any prison term. If the defendant violates any of the supervised-release conditions, the Court could revoke the defendant's supervised release and order the defendant to serve additional time in prison;
- A $100 mandatory special assessment;
- Forfeiture of property; and
- Restitution

ELEMENTS OF THE OFFENSE:

The essential elements that must be proved beyond a reasonable doubt to establish the offense charged are as follows:

First: The defendant provided or attempted to provide material support or resources, or concealed or disguised, or attempted to conceal or disguise, the nature, location, source, or ownership of material support or resources in the manner described in the ~~indictment~~ information; and

Second: The defendant knew or intended that the material support or resources were to be used to prepare for or carry out a violation of 18 U.S.C. §§ 844(f) or 1361, or to carry out the concealment of an escape from the commission of 18 U.S.C. §§ 844(f) or 1361.

Factual Resume - Page 1

STIPULATED FACTS:

Beginning on or about July 3, 2025, and continuing until on or about July 4, 2025, in the Northern District of Texas, Joy Gibson planned with others to provide resources and personnel, including herself, knowing and intending that they would be used to carry out acts of terrorism, that is, violations of 18 U.S.C. §§ 844(f) and 1361, against the Prairieland Detention Center (Prairieland), located in Alvarado, Texas, which the U.S. Department of Homeland Security and U.S. Immigration and Customs Enforcement (I.C.E.) was using to house illegal aliens awaiting deportation. The terrorism was calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct.

Gibson and the others who participated in the acts against Prairieland adhered to an anti-fascist, anti-I.C.E., anti-government ideology, which the government classifies as Antifa. In line with this ideology, on or about July 3, Gibson, along with others, participated in the planning of the "direct action" against Prairieland on the night of July 4, to influence and affect the conduct of the government by intimidation and coercion, and to retaliate against government conduct relating to the detention and deportation of illegal aliens.

Some of those who participated had gone to Prairieland during the day on July 4 to conduct reconnaissance. Using an encrypted messaging application, Gibson shared a photograph showing the location of a Prairieland surveillance camera in a group chat that included other participants in the July 4 "direct action" against Prairieland.

Gibson, with the others, agreed to dress in "black bloc" to conceal their identities from law enforcement and provide cover for each other to commit the above enumerated crimes without being identified. That is, Gibson knew that she and the others dressing similarly and anonymously made it more difficult for police to identify them engaging in illegal conduct, including concealing their escape from committing violations of 18 U.S.C. §§ 844(f) and 1361.

Gibson rode with at least one other participant to Prairieland. After arriving at Prairieland, Gibson joined with the others who were shooting off fireworks at the facility while she and others stood nearby wearing black bloc. Gibson, dressed in black bloc, had a handheld radio connected to an earpiece for communication. Gibson was also aware that others had brought firearms, handheld radios for communication, Kevlar or ballistic vests, and individual first aid kits (IFAKs).

Gibson walked down the Prairieland fence line, on Prairieland property, to a spot another participant identified as a place to shoot off the fireworks so the detainees could see them. Gibson joined the others who were shooting off fireworks at the facility, willfully disregarding the likelihood that damage to property would result, while Gibson and others stood nearby wearing black bloc. Other coconspirators spray-painted offensive and pejorative graffiti on a Prairieland guard shack and employees' cars parked in the Prairieland parking lot, and damaged a Prairieland surveillance camera and a government van. Gibson stipulates that the damage to government property exceeded $1,000.

Throughout the July 4 "direct action," one participant stood watch about 200 meters away from the main group, armed with an AR-15 rifle that had a binary trigger. This participant's role was to alert them of any police response. When an Alvarado (APD) Police Officer responded to the scene, the participant armed with the AR-15 opened fire on the APD officer and two unarmed Prairieland Correctional Officers.

Gibson was apprehended yards away from where the participant had fired on the APD officer and the Correctional Officers.

SIGNED this 6th day of November, 2025.

JOY GIBSON
Defendant

MATT SMID
Counsel for Defendant

William Biggs